WALTER A. WOOD HARVESTER COMPANY v. ANDREW RAMBERG.[1]

February 4, 1895.

No. 8991.

### Sale—Evidence of Expectation of Buyer.

A certain ruling of the trial court, by which defendant was permitted to testify that when he gave a written order to plaintiff's agent for one of its harvesters and binders, in which order was the usual warranty of the machine, he "expected" to get a machine like one which had been exhibited to him by the agent before he gave the order, *held* erroneous.

### Same.

The court charged the jury that the exhibited machine became an integral part of the contract, and the standard by which to test and compare the machine actually furnished. *Held* error, and, further, that such charge was not justified by an instruction previously given at the instance of plaintiff's counsel, or by any evidence in the case.

Action in the district court for Polk county for the puchase price of one of plaintiff's harvesters and binders. The material parts of the pleadings are stated in the opinion. A portion of the warranty attached to the order was in these words: "All our machines are warranted to be well made, and of good material, and to do good work when set up and operated as per printed directions." Other provisions of the warranty are mentioned in the opinion.

At the trial before Ives, J., with a jury, the court refused to direct the jury to return a verdict for plaintiff for the amount claimed. There was a verdict for defendant. From an order denying its motion for judgment notwithstanding the verdict, and refusing to set aside and vacate the verdict and grant a new trial, plaintiff appealed. Reversed.

*John L. Townley* and *A. A. Miller*, for appellant.

*R. L. Montague*, for respondent.

COLLINS, J. Defendant gave to plaintiff—the latter acting through an agent—a written order for one of its harvesters and binders,—B. C., six-foot cut,—for which he agreed to pay $130, to

[1] Reported in 61 N. W. 1182.

be evidenced by two promissory notes.    The machine was delivered
to defendant, and, on his refusal to execute and deliver the notes,
this action was brought for the agreed purchase price.    According
to the terms of the order, which was in the language usually found
in these very common instruments, the machine was purchased sub-
ject to a warranty therein contained, "and no other."    By the terms
of this warranty, if, upon attempting to start the machine, it should
not work well, immediate notice was to be given plaintiff; and time
given within which the defects might be remedied, and the ma-
chine put in good working order.    If then it could not be made to
do good work, the machine was to be returned.    It was expressly
agreed that the warranty was not to be abridged or changed in any
manner.    At the time the order was given one of plaintiff's har-
vesters and binders, of the size and kind ordered, was set up and
on exhibition, and was exhibited to defendant, at the agent's place
of business.    The machine delivered to defendant was boxed up or
crated, for convenience in shipping, and he loaded it into his wagon
for transportation to his farm; an expert in plaintiff's employ go-
ing along with him, to set it up, and put it in running order at
the farm.    After going a few miles, defendant, as he claims, in-
spected it, without removing it from the boxes or crates, and, in-
sisting that it was an old machine, with rusted, bent, and broken
parts, refused to carry it further, or to allow the expert to set it
up and attempt to make it work, in compliance with the terms of
the warranty.    The verdict was for defendant, and, on appeal from
an order refusing a new trial, counsel for plaintiff assign as error
in the trial several rulings of the court in the admission of evidence,
error in its charge, and also that the verdict was not justified by
the evidence.

The complaint set out the giving of the order; that, in accordance
therewith, plaintiff duly delivered a machine which fully complied
with the required conditions; its acceptance by defendant, and his
refusal to execute and deliver the notes.    The answer admitted the
making of the order, but alleged that it was agreed and understood
by the parties that the machine should be new, with the latest im-
provements, and fit to cut and bind grain in a good and satisfac-
tory manner.    It alleged that the machine offered by plaintiff was
old, worn, rusty, of inferior quality, and much less value than that

designated and intended by the order; was not fit or in condition
for use as a harvester and binder; and that when defendant saw
this he refused to accept it.   It will be noticed that nowhere in
the answer was it averred that the sale was by sample, or that the
machine was to come up to the standard, or to be as good a machine
as the one on exhibition at the agent's place of business.   On the
trial, defendant was allowed to testify that before giving the order
a sample machine was shown him,—"a bright, new machine," which
appeared to be in proper condition, and with which he found no
fault.   He was then asked, "In giving this order, state whether or
not it was intended to be an order for a machine of that kind," to
which question plaintiff's counsel objected; and although the court
ruled, as it had done before, that no testimony could be introduced
which would vary the terms of the order or contract, the defend-
ant was allowed to answer:   "I expected to get a machine like the
sample binder."   A motion to strike out the answer was overruled,
and in connection with testimony tending to show that the machine
delivered had some of its parts broken, bent, and rusty, the court
permitted it, as it appeared in the boxes and crates, to be compared
with the so-called "sample machine."   And with much explicit-
ness the jury was charged that the sample machine became an in-
tegral part of the order; that if the one delivered failed to come
up to—fell short of—the standard, and was not as good as that on
exhibition, defendant was not bound to accept it.   It is obvious that,
by means of these rulings and charge, the case was transformed
from an action on defendant's order for a machine which should ful-
fill the terms of the contract of warranty—the case made by the
pleadings—into an action to recover the agreed price of a machine
which should not only comply strictly with the conditions of the
warranty, but should also be of the same quality, and as good, as
the one on exhibition.   Counsel for defendant makes no attempt to
sustain the rulings or the charge, except upon the ground that by
its own testimony, and a certain request to charge, which was
given to the jury, plaintiff made the exhibited machine an element
of the contract, and the standard by which to compare and judge
the one to be delivered to defendant.   When introducing their evi-
dence in chief, counsel for plaintiff asked the agent who took the
order if there was a machine, of the character referred to, set up

in his place of business at the time the order was given.   He re-
plied that there was, and that it was shown to defendant before the
order was given.   We cannot see upon what theory it can be urged
that proof by plaintiff of these facts opened the way for testimony
as to what defendant expected when he gave the order.   Even if it
had appeared that the machine exhibited was to be a standard of
comparison,—and it did not,—evidence as to what defendant ex-
pected would be inadmissible.   He had entered into a contract for
the purchase of a certain described harvester and binder, to be well
made, of good materials, and warranted to do good work.   On the
pleadings and on the evidence, as it stood when defendant was ask-
ed the question, it was not what he expected to get, but what he or-
dered, which should have governed the court in its rulings.

Subsequently to the reception of the evidence which we have said
was inadmissible, the machine received was compared in various
ways with that shown defendant when he gave the order.   And
there was considerable testimony produced by plaintiff tending to
show that the machines were of the same year's make, of the same
lot, or shipment to the agents, and alike in character and pattern,
all of which was to meet defendant's claim that he was to have a
machine like that set up in the agent's place of business.   The
plaintiff's counsel also requested, and the court charged, that if the
machine delivered was a good machine, and alike in character and
pattern to the one exhibited, defendant was bound to receive it, sub-
ject to the conditions as to warranty found in the order.   We fail
to see why this testimony as to the machines being alike in char-
acter and pattern, or the request to charge on which the court acted,
should conclude counsel for plaintiff from excepting to that part of
the charge subsequently given, in which the jury was told that the
machine exhibited to defendant became an integral part of the con-
tract, and that defendant was not bound to accept a machine which
fell short of that standard.   After the rulings whereby, against
plaintiff's objections, the sample machine was made the test by
which the contract was to be determined, and not the contract itself,
plaintiff had the right to meet defendant and to endeavor to defeat
him on his own theory of the case.   Plaintiff's counsel were not
obliged to rely upon the fact that the contract had been complied
with, as to the quality and character of the machine, but could in-

troduce testimony, and could obtain instructions to the jury, in line with the views of the court and the defendant as to the issues. But, were this not true, the court went much further in its charge than would have been justified by plaintiff's request, or by any evidence introduced by either party. It is evident that, by the instructions which made the exhibited machine an integral part of the contract,—the standard by which to compare and test the one ordered,—the jury were led into the error of supposing that not only should the machines be alike in character and pattern, but also in details of finish, in appearance, and freedom from stains and rust. Even if the order could be ignored, and the machine on exhibition dragged into the contract entered into by the parties, there was no testimony tending to show that the sale was by sample. To constitute a sale by sample, so as to subject the seller to liability on an implied warranty, even as to quality, it must be made to appear that the parties contracted solely with reference to the sample or article exhibited, and that it was mutually understood they were dealing with the sample with the understanding that the machine ordered should be like it. Day v. Raguet, 14 Minn. 203 (273). The evidence here came nowhere near what the rule requires.

Order reversed.